**Bruce M. STARGATT, as Receiver for McDonnell & Co., Incorporated, Receivership, Plaintiff,**

v.

**The FIDELITY AND CASUALTY COMPANY OF NEW YORK et al., Defendants.**

**Civ. A. No. 4357.**

United States District Court,
D. Delaware.

July 16, 1975.

Jack B. Jacobs, and Doris M. Toll, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiff.

David A. Drexler, and William H. Sudell, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants.

MEMORANDUM OPINION

STAPLETON, District Judge:

The question presented here is whether the benefits of an excess insurance policy are collectible when claims equal to the limits of the primary policy have been settled, or only when the primary policy limits have actually been paid.

This case arises out of the receivership of McDonnell & Co. Incorporated, a securities brokerage firm. McDonnell carried a number of insurance policies to protect it against certain claims for which it might be liable under the provisions of federal or state securities laws. Two of these policies are relevant here: a primary policy, held with The Fidelity & Casualty Company of New York, which contained a $50,000 deductible provision and provided coverage for the next $250,000 of such claims; and an excess policy, held with a group of underwriters organized by Lloyd's of London, which provided coverage for the next $750,000 of the same claims.

The latter policy explicitly provided only excess coverage. As its third paragraph provided:

The Insurers shall not be liable to indemnify the Assured hereunder to any greater extent than $750,000 (SEVEN HUNDRED FIFTY THOUSAND DOLLARS) . . ., and then only when the Primary Policy in the amount of $250,000 (TWO HUNDRED FIFTY THOUSAND DOLLARS) has been exhausted. . . .

■ Plaintiff, McDonnell's receiver, brought this diversity action against both Fidelity and the Lloyd's group to recover benefits allegedly due under the policies. The amended complaint alleged covered losses in excess of $4.5 million. Both defendants denied coverage, and Fidelity asserted a counterclaim in the amount of $650,000. Plaintiff thereafter settled his claim against Fidelity in return for a cash payment of not more than $135,000 [1] and the release of Fidelity's counterclaim.[2] Following the settlement, the Lloyd's group moved for summary judgment on the above undisputed facts, urging that since the limits of the primary policy were not exhausted by the settlement, no liability could arise under the excess policy.

■ The Lloyd's defendants argue, in effect, that the phrase "only when the primary policy . . . has been exhausted" should be read to mean "only when the primary policy limits have been actually paid."[3] Neither of the parties, nor the Court, has found any Delaware authority, which would be controlling, on this question.[4] However the Second Circuit, ruling as a matter of general common law in the pre-*Erie*-

---

1. The settlement involved an unallocated cash payment of $135,000 in satisfaction of claims under four different policies including the one involved here.

2. Thus it is not clear that the consideration received by plaintiff for claims under this policy had a value of less than $250,000. The defendants, accordingly, have not demonstrated an absence of a genuine dispute of material fact, which it was their burden to show on this motion for summary judgment. See *Manufacturers Trust Co. v. Rogers*, 181 F.Supp. 116, 123 (S.D.N.Y.1960), *aff'd sub nom. Manufacturers Trust Co. v. Kennedy*, 291 F.2d 460 (2nd Cir. 1961); 6 *Moore's Federal Practice* ¶ 56.15[3]. Since, how-

ever, proof on this issue at trial might be lengthy and can be expeditiously excised as a matter of law at this time, the opinion will proceed to consider the issue posed by the parties.

3. They argue that this is the "plain meaning" of the policy language. It does not seem so to the Court. The plain meaning of "exhausted" is "entirely used up," and the coverage of the primary policy has been entirely used up by the settlement.

4. It has been suggested that the Delaware conflict of laws rule might apply New York substantive law to this question. But no New York law has been cited to the Court either.

*Tompkins* era, answered this argument in a case on all fours with this one:

The defendant argues that it was necessary for the plaintiff actually to collect the full amount of the policies for $15,000, in order to "exhaust" that insurance. Such a construction of the policy sued on seems unnecessarily stringent. It is doubtless true that the parties could impose such a condition precedent to liability upon the policy, if they chose to do so. But the defendant had no rational interest in whether the insured *collected* the full amount of the primary policies, so long as it was only called upon to pay such portion of the loss as was in excess of the limits of those policies. To require an absolute collection of the primary insurance to its full limits would in many, if not most, cases involve delay, promote litigation, and prevent an adjustment of disputes which is both convenient and commendable. A result harmful to the insured, and of no rational advantage to the insurer, ought only to be reached when the terms of the contract demand it.

*Zeig v. Massachusetts Bonding & Insurance Co.*, 23 F.2d 665 (2nd Cir. 1928) (A. N. Hand, J.; emphasis in original). Accord, 6 Appleman, *Insurance Law & Practice* § 3913:

The settlement under a primary policy of claims equaling the amount of the policy permits recovery on a secondary policy made applicable only where the primary insurance is exhausted in payment of claims.

If summary judgment is denied here, it will still be plaintiff's burden to prove the amounts of McDonnell's losses and their covered nature. The excess insurers will be liable only for covered losses in excess of $300,000. I believe the reasoning of the *Zeig* case is correct, and I am confident that the Delaware courts would reach the same result in this case. Accordingly, summary judgment will be denied.