577 F.2d 421
 UNITED STATES FIRE INSURANCE CO., Plaintiff-Appellee,
v.
Judith A. LAY, Administratrix of the Estate of Robert O.
Lay, Deceased, et al., Defendant-Appellant.
 No. 78-1083.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 27, 1978.
Decided May 31, 1978.
Rehearing and Rehearing In Banc Denied June 30, 1978.
 
 George V. Heins, Indianapolis, Ind., for defendant-appellant.
 John P. Price, Indianapolis, Ind., for plaintiff-appellee.
 Before CUMMINGS, Circuit Judge, MILLER, Associate Judge,* and TONE, Circuit Judge.
 TONE, Circuit Judge.
 
 
 1
 The issue before us, broadly stated, is the liability of an excess public liability insurance carrier when the personal injury claimant has settled with the insured and the primary carrier for less than the amount of the primary coverage. The District Court held that the excess carrier's liability was extinguished by the settlement. We agree and affirm the judgment.
 
 
 2
 Robert O. Lay was killed in a motor vehicle accident involving a truck owned by International Comador of Memphis, Inc. At the time of the accident, Comador had two liability policies, the primary one with Canal Insurance Company having a limit of bodily injury liability of $100,000 as to each injured person for a single occurrence, and the excess policy with United States Fire Insurance Company having a limit of liability of $1,000,000 for each occurrence for a loss in excess of the primary limits.
 
 
 3
 In anticipation of a wrongful death action, Canal, the primary insurer, negotiated a settlement with the decedent's administratrix and widow, Judith A. Lay. The settlement agreement provided that the primary insurer would pay the administratrix only $70,000 of its $100,000 primary policy limit. The administratrix released the primary insurer from any further payment as a result of any judgment. In the event of a judgment in excess of $100,000, the primary insurer and Comador were to "be given credit" of $100,000 on the judgment "and any verdict or judgment in excess of . . . ($100,000.00) . . . will be marked satisfied within available insurance coverages." The agreement recited that except for the "credit" of $100,000 against any judgment obtained by the administratrix against Comador "or uninsured amounts in excess thereof," it was not the intention of the parties to release any claims the administratrix had against parties other than Canal.
 
 
 4
 Subsequently the administratrix filed a wrongful death action against Comador, which the primary insurer defended on behalf of Comador. The parties presented, and the court entered, an agreed judgment in the amount of $150,000 in favor of the administratrix and against Comador to be satisfied out of available insurance proceeds only, with credit given to the primary insurer in the amount of $100,000.
 
 
 5
 The United States Fire Insurance Company, the excess carrier, had knowledge of and participated in the negotiations surrounding the agreed judgment entry but was not a party to that agreement. In a separate agreement with the administratrix and Comador, United States Fire reserved its right to contend that it had no liability. The District Court found, and we agree, that the excess carrier had not waived its right, and was not estopped, to dispute its obligation to pay the unsatisfied portion of the judgment. The appellant does not contend otherwise.
 
 
 6
 After the entry of the agreed judgment, the excess carrier commenced this declaratory judgment action against the administratrix, the primary insurer, and the insured, seeking a declaration that it was not liable for any part of the judgment. The parties submitted the case for decision upon a written record. The court entered a judgment declaring that the excess carrier was not liable.[1]
 
 
 7
 The undertaking of the excess carrier is stated in Article I of its policy, entitled "Coverage":
 
 
 8
 The Company agrees to indemnify the insured for ultimate net loss in excess of the retained limit hereinafter stated, which the insured may sustain by reason of the liability imposed upon the insured by law, or assumed by the insured under contract:
 
 
 9
 (a) Personal Injury Liability. For damages, including damages for care and loss of services, because of personal injury including death at any time resulting therefrom, sustained by any person or persons.
 
 
 10
 The term "ultimate net loss" is defined elsewhere in the policy to mean
 
 
 11
 . . . the total of the following sums with respect to each occurrence:
 
 
 12
 (1) All sums which the insured, or any company as his insurer, or both become legally obligated to pay as damages, whether by reason of adjudication or settlement, because of personal injury . . . and
 
 
 13
 (2) All expenses incurred by the insured in the investigation, negotiation, settlement and defense of any claim or suit seeking such damages, . . . provided "ultimate net loss" shall not include any damages or expense because of liability excluded by this policy.
 
 
 14
 (Condition D(b).)
 
 
 15
 It is plain from this language that the excess carrier is liable only if and when the insured sustains a loss in excess of the retained limit of $100,000 by reason of liability imposed by law or assumed by contract. No such loss was ever sustained by Comador. It was effectively released from all liability in excess of $70,000 by the settlement agreement executed before the action against it was commenced. The agreed judgment did not purport to impose liability on Comador. Because Comador was not and could not be liable for any amount in excess of $100,000, the obligation of the excess carrier to indemnify Comador never arose.
 
 
 16
 It is argued on behalf of the administratrix that the excess policy is not a true indemnity policy because it does not require that the insured actually pay the judgment before liability attaches. See 7 J. Appleman, Insurance Law and Practice, § 4261 (1962). Whether or not the policy is one of indemnity in the technical sense, it is in substance a contract for indemnity against liability. The obligation to pay does not arise until the insured becomes liable. The excess carrier has no obligation whatsoever unless and until the insured becomes liable.
 
 
 17
 The administratrix also relies upon another condition of the policy that provides in pertinent part as follows:
 
 
 18
 H. Loss Payable. Liability of the company with respect to any one occurrence shall not attach unless and until the insured, the company in behalf of the insured, or the insured's underlying insurer, has paid the amount of retained limit. The insured shall make a definite claim for any loss for which the company may be liable within twelve (12) months after the insured shall have paid an amount of ultimate net loss in excess of the amount borne by the insured or after the insured's liability shall have been made certain by final judgment against the insured after actual trial, or by written agreement of the insured, the claimant, and the company . . ..
 
 
 19
 Relying upon Judge Augustus N. Hand's opinion in Zeig v. Massachusetts Bonding & Insurance Co., 23 F.2d 665 (2d Cir. 1928), the administratrix argues that the satisfaction of a judgment by agreement and compromise constitutes payment within the meaning of the quoted condition. The short answer is that the condition becomes applicable only when there is coverage. Because the insured never became liable for an amount exceeding $100,000, there is no coverage. It is therefore immaterial whether, if there had been coverage, the underlying carrier would be considered to have "paid the amount of retained limit."
 
 
 20
 We can conceive of good reasons for an excess carrier to be unwilling to accept liability unless the amount of the primary policy has actually been paid. A settlement for less than the primary limit that imposed liability on the excess carrier would remove the incentive of the primary insurer to defend in good faith or to discharge its duty, see, e. g., Estate of Penn v. Amalgamated General Agencies, 148 N.J.Super. 419, 372 A.2d 1124, 1127 (1977), to represent the interests of the excess carrier. Here the primary insurer had no incentive whatsoever to reach a settlement at a figure between $70,000 and $100,000. Moreover, the settlement agreement terminating Comador's liability of the administratrix made her subsequent wrongful death action against Comador a sham. Cf. Burkett v. Crulo Trucking Company, Inc., Ind.App., 355 N.E.2d 253 (1976). Neither Comador nor the primary insurer, which purported to defend the action, had any interest whatsoever in the outcome.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The Honorable Jack R. Miller, Associate Judge of the United States Court of Customs and Patent Appeals, sitting by designation
 
 
 [1]
 Indiana law governs, but there are no Indiana authorities (and appear to be none elsewhere) that are on point