**INDIANA GAS COMPANY, INC., Richmond Gas Corporation d/b/a Indiana Gas Company, Inc. and Terre Haute Gas Corporation d/b/a Indiana Gas Company, Inc., Plaintiffs,**

**v.**

**AETNA CASUALTY & SURETY COMPANY, Connie Lee Insurance Company, Continental Casualty Company, Continental Insurance Company, Greenwich Insurance Company, Home Insurance Company, Certain Underwriters at Lloyd's, London and Certain London**

---

Market Insurance Companies, North River Insurance Company, Ranger Insurance Company, St. Paul Fire & Marine Insurance Company, St. Paul Surplus Lines Insurance Company, and the Travelers Company, Defendants.

No. 1:95–CV–101.

United States District Court, N.D. Indiana, Fort Wayne Division.

Oct. 2, 1996.

Sherrill W. Colvin, Haller and Colvin, Fort Wayne, IN, Ronald E. Christian, Whitney E. Bakley, Indiana Gas Company, Indianapolis, IN, Edward P. Henneberry, Ezra C. Levine, Peter C. Condron, Howrey and Simon, Washington, DC, Charles H. Samel, Howrey and Simon, Los Angeles, CA, for Indiana Gas Company, Richmond Gas Corporation and Terre Haute Gas Corporation.

.J. Frank Kimbrough, Wilks and Kimbrough, Fort Wayne, IN, Scott H. Sirich, Plunkett and Cooney, Detroit, MI, Charles W. Browning, Kenneth C. Newa, Stephen P. Brown, Richard G. Szymczak, Aetna Casualty & Surety Company, Detroit, MI, for Aetna Casualty & Surety Company.

Thomas W. Yoder, Miller Carson Boxberger and Murphy, Fort Wayne, IN, Patrick Cremin, Michael J. Sehr, Audrey S. Hanrahan, Jerome J. Duchowicz, Haskell and Perrin, Chicago, IL, for Continental Casualty Company, Continental Insurance Company and Greenwich Insurance Company.

Roger E. Warin, Evan Anne O'Neill, Harry Lee, John Flyger, James S. Felt, Steptoe and Johnson, Washington, DC, David J. Bloss, Grand Rapids, MI, for Home Insurance Company.

Dennis F. Cantrell, Bingham Summers Welsh and Spilman, Indianapolis, IN, Erik H. Aldeborgh, Boston, MA, for Liberty Mutual Insurance Company.

Michael D. Ramsey, James E. Rocap, Jr., Rocap Witchger and Threlkeld, Indianapolis, IN, Thomas J. Quinn, Stephen Thomas Roberts, Robert J. Keane, Mendes and Mount, New York City, Kandice L. Kilkelly, Rocap Witchger and Threlkeld, Indianapolis, IN, for Certain Underwriters at Lloyd's, London.

William L. Sweet, Jr., Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, Kandice L. Kilkelly, Brian S. Fraser, Arthur S. Greenspan, Kenneth Held, Richards Spears Kibbs and Orbe, New York City, for Certain London Market Insurance Companies.

Kenneth W. Biermacher, Dallas, TX, for North River Insurance Company.

William Anaya, James S. Stickles, Janet A. Kachoyeanos, Johnson and Bell LTD, Chicago, IL, for Ranger Insurance Company.

Mary K. Reeder, Riley Bennett and Egloff, Indianapolis, IN, Kathy P. Waring, Sonia S. Waisman, Luce Forward Hamilton and Scripps, San Diego, CA, for St. Paul Fire &

Marine Insurance Company and St. Paul Surplus Lines.

Arthur G. Surguine, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN, Karen H. Flax, Robert C. Johnson, Sonnenschein Nath and Rosenthal, Chicago, IL, for the Travelers Indemnity Company.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, District Judge.

This matter is before the Court on the "Motion to Dismiss Plaintiff's Claims for Declaratory Judgment as to the Richmond Site for Lack of Jurisdiction" filed July 10, 1996, by defendants St. Paul Fire & Marine Insurance Company, St. Paul Surplus Lines Insurance Company, Ranger Insurance Company, those London Market insurers severally subscribing to policies of excess insurance in favor or Richmond Gas Corporation, and Home Insurance Company. The thrust of that motion is that there is no case or controversy with respect to claims relating to the Richmond site. That same date, defendants Aetna Casualty & Surety Company, the London Market Insurers and the Home Insurance Company joined in that motion to dismiss contending that the same arguments applied with respect to the manufactured gas plants at Bedford, Greencastle, Huntington, Marion, Seymour and Terre Haute. Plaintiffs responded to the motion to dismiss for lack of jurisdiction on July 10, 1996 to which a reply was filed on August 9, 1996. For the following reasons, the motion to dismiss will be granted.

### Factual Background

For present purposes, the relevant facts, construed in plaintiffs' favor, may be summarized briefly as follows: This litigation has as its origin a federal lawsuit that was filed by Indiana Cities Water Corporation. In that case, an amended complaint was filed to add Indiana Gas and PSI Energy, Inc. The amended complaint alleged contamination and the threat of contamination in the shallow and deep aquifers at the point of raw water collection at a site in Shelbyville, Indiana. Indiana Gas was then joined as a party by the Indiana Department of Environmental Management (IDEM) in an enforcement action relating to the Shelbyville site. Purportedly Indiana Gas timely notified its insurers (some of the defendant insurers in this action) but those insurers failed and refused to indemnify Indiana Gas.

A separate enforcement action was instituted against Indiana Gas by IDEM, this time relating to groundwater contamination at a former manufactured gas plant (MPG) at Lafayette. Indiana Gas defended the enforcement action and conducted remedial activities in compliance with orders issued by IDEM. Once again, after notifying the insurers, the insurers refused to defend the action or indemnify Indiana Gas in accordance with their policies.

Subsequent to those actions, Indiana Gas conducted a preliminary assessment/site investigation at former MGP sites in Marion, Bedford, Greencastle, Huntington, Seymour, Terre Haute and Richmond. Those investigations were completed in March of 1995 revealing contamination at each of the seven sites.[1] At least with respect to the Richmond, Terre Haute, Bedford and Greencastle sites, the level of contamination exceeds regulatory standards which could require further response or remediation. In November of 1992, Indiana Gas notified St. Paul, Aetna, Home and the London Market Insurers of the potential loss at the Marion, Bedford, Greencastle, Huntington, Seymour, Terre Haute and Richmond former MGP sites. In that correspondence, Indiana Gas requested that the defendants agree to reimburse Indiana Gas for all costs incurred in connection with the investigation of the MGP sites together with the cost of any remediation of any potential property damage pertaining to the sites. The insurers refused to acknowledge their coverage for these potential costs.

Plaintiffs filed suit in this Court on April 14, 1995. Count I alleges that "[d]efendants have failed to honor their contractual obli-

---

1. It would appear that defendants' own expert agreed that those sites were in fact contaminated.

gation: to (1) defend Indiana Gas; (2) pay in full the defense costs and expenses of Indiana Gas; and/or (3) indemnify Indiana Gas for damages and/or expenses and/or its losses and obligations with respect to the claims alleged ..." (complaint ¶¶ 95 & 98) in the Shelbyville and Lafayette actions.[2] In Count 2, plaintiffs seek a declaratory judgment that the insurers have failed in their duty to defend and indemnify with respect to not only the Shelbyville and Lafayette sites but also the Bedford, Greencastle, Richmond, Huntington, Marion, Seymour, and Terre Haute sites.

At the time of the filing of the complaint, no third party (including the IDEM or the Environmental Protection Agency (EPA)) had made any claim, issued any order, or filed any action against Indiana Gas regarding the Bedford, Greencastle, Huntington, Marion, Seymour, Terre Haute or Richmond MGPs. Nor had any claim or administrative orders been threatened regarding any of these seven sites.

### *Application of Law*

■ As indicated at the outset, St. Paul and others have filed a motion to dismiss the declaratory judgment claim as it relates to the Richmond site because this Court lacks subject matter jurisdiction. In its joinder of that motion, Aetna and others contend the same with respect to the Bedford, Greencastle, Huntington, Marion, Seymour and Terre Haute sites. Because this court is of the view that there is no case or controversy with respect to those sites, the motion to dismiss will be granted.

■ " 'The judicial power does not extend to abstract questions.' " *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 242, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952) (*quoting Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 324, 56 S.Ct. 466, 472, 80 L.Ed. 688 (1936)). Rather, federal courts can only resolve actual "cases" and "controversies." U.S. Const. art. III, § 2. The existence of a case or controversy is a prerequisite to all federal actions, including those for injunctive

and declaratory relief. *Skelly Oil Co. v. Phillips Petroleum*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950). Consonant with Article III, the Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any Court in the United States, upon the filing of an appropriate pleading may declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

"[A] justiciable controversy is ... distinguished from a difference or dispute of a hypothetical or abstract character; [or] from one that is academic or moot." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* To determine whether there is a "controversy," the court must "look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *International Harvester v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir.1980).

"At first blush, the existence *vel non* of an actual controversy would not appear to lend itself to discretionary disposition. Either there is an actual controversy or there is not." *Certain Underwriters at Lloyd's v. St. Joe Minerals Corp.*, 90 F.3d 671, 675 (2nd Cir.1996). " 'The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy.' " *Id.* (quoting, *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

The notion that the difference between an abstract question and a controversy is one of degree, and that it is not possible to fashion a precise test distinguishing between the two, can be seen in cases such as this where an insured seeks a declaratory judgment against

---

2. Indiana Gas alleges in the complaint that it has spent in excess of three million dollars relating to the remedial activities at the Lafayette site and in

excess of two million dollars on the Shelbyville site.

its insurer relating to remedial actions or clean up costs at a contaminated site. In the present matter, defendants, relying primarily upon the United States Court of Appeals for the Eleventh Circuit's decision in *Atlanta Gas & Light v. Aetna,* 68 F.3d 409 (11th Cir.1995) and the Eighth Circuit's decision in *Gopher Oil Company v. Bunker,* 84 F.3d 1047 (8th Cir.1996) contend that this case is not justiciable. The plaintiffs, on the other hand, place heavy reliance on the United States Court of Appeals for the Third Circuit's decision in *Riehl v. Travelers Insurance Co.,* 772 F.2d 19 (3rd 1985) and the Eighth Circuit's opinion in *Aetna Casualty and Surety Co. v. General Dynamics Corp.,* 968 F.2d 707 (8th Cir.1992) for the opposite proposition. Those decisions, which appear to arrive at seemingly divergent results, however, are reconcilable when the facts presented are closely examined. Moreover, when the facts presented here are compared with those in the above-cited decisions, it is clear that this case is more akin to *Atlanta Gas* and *Gopher Oil* than it is to *Riehl* and *General Dynamics.*

In *Atlanta Gas,* the insured brought an action for declaratory judgment asking the court to determine that the insurer had a duty to defend and indemnify it for cleanup costs at its manufactured gas plants. On appeal, the United States Court of Appeals for the Eleventh Circuit determined, *sua sponte,* that there was no justiciable controversy writing:

> The district court made no determination that a justiciable controversy existed when the complaint was filed; the record would not support such a finding. Not only had the insurers not yet received the notice, no one knew exactly what had to be cleaned up, or how much the cleanup would cost. While it is not necessary to know each of these factors with certainty in order to seek declaratory relief, when AGL filed its complaint, it was not clear that state and federal environmental agencies would ever require cleanups at any of AGL's former MPG sites.
>
> The record demonstrates that the regulatory climate was evolving when AGL filed its suit: what actions would be required by regulators was uncertain. At the time the complaint was filed, GEPD had concluded that AGL's Georgia site posed no threat to public health, and FDER had recommended only 'additional site screening' at the Sanford, Florida site. No then-owner of an MGP site had called upon AGL to reimburse them for cleanup costs or to clean up wastes itself. No lawsuits had been filed against AGL, either by owners of former MGP sites or by adjacent property owners. With so many material facts dependent upon future contingencies, it would be impossible to resolve all the issues relative to the timeliness of notice in a way that would do justice to the parties.

*Id.* 68 F.3d at 415. Similarly, in *Gopher Oil,* the United States Court of Appeals for the Eighth Circuit upheld the dismissal of claims seeking declaratory judgment of potential liabilities of two parties with respect to environmental cleanup costs at a site since there were "[n]o facts [to] indicate an immediate threat of either MERLA [Minnesota Environmental Response & Liability Act] or tort liability." *Id.* 84 F.3d at 1051. Thus, in both *Atlanta Gas* and *Gopher Oil,* there was no controversy within the meaning of Article III.

Conversely, a justiciable controversy relating to the costs of cleaning up contaminated sites was found to exist in both *Riehl* and *General Dynamics.* In *Riehl,* an insured brought an action seeking a declaration that certain insurance policies covered expenses of cleaning up a toxic dump site. Although the insured had received notice from the EPA that he was a responsible party under the Comprehensive Environmental Response Compensation Liability Act (CERCLA) and as such would be assessed the expense of cleaning up the site, as of the time of filing of suit no legal proceedings had been instituted against him by either the Pennsylvania Department of Environmental Resources or the EPA. In holding that the matter was justiciable, the United States Court of Appeals for the Third Circuit wrote:

> In order for a case to be justiciable, the salient facts must be real, not hypothetical. Our review of justiciability is plenary. The

problem of justiciability is especially troublesome in a declaratory judgment action, where the court may be asked to decide a case based on events that have not yet and may not occur.... Where, however, the essential facts establishing a right to relief, including declaratory relief, have already occurred, the case is justiciable....

From the summary judgment record before us, it appears that all relevant events have already occurred, and the case thus appears justiciable. The dumping of the wastes and the leaching off the property of these chemicals have apparently already transpired....

The only events which have yet to occur are the expenditures of the funds by Riehl for clean-up and the entry of judgment imposing liability on Riehl for the toxic waste damage. However, neither immediate liability for damages, nor a liquidation to the extent of an insurer's indemnification obligation is necessary in this Circuit to establish a justiciable controversy. In *ACandS v. Aetna Casualty & Surety Co.*, 666 F.2d 819 (3rd Cir.1981), this court found justiciable the question of liability insurance coverage for exposure to asbestos even though not all of the carriers against whom declaratory relief was sought were as yet implicated by an actual suit against the insured.

Since all relevant events appear from the record to have occurred, we hold that this case is ripe for adjudication.

*Id.* 772 F.2d at 22–23 (footnote omitted). Similarly, in *General Dynamics Corp.*, an insurer brought an action against its insured seeking declaratory relief as to its obligation to defend and indemnify the insured in connection with claims involving environmental pollution. At issue were sixteen sites, however, the district court held that with respect to four of those sites the case was not ripe since no suit had been filed nor any settlement achieved at the four sites. In reversing that aspect of the district court's decision,

the United States Court of Appeals for the Eighth Circuit wrote:

Aetna also contends that the district court erred by holding that because no suits had yet been filed nor any settlements reached with respect to four of the sixteen sites, Aetna's declaratory judgment action was not ripe for adjudication as to those sites.

Aetna argues that since General Dynamics had made a clear demand for payment of defense and indemnity costs with respect to each of the four sites and because Aetna disputed those demands, there is a live justiciable controversy between the parties sufficient to invoke the jurisdiction of the district court.... General Dynamics does not address this issue on appeal; apparently it concedes that the district court's decision was in error. We agree with Aetna that a live justiciable controversy exists between the parties and hold that Aetna's suit is ripe with respect to the four sites.

*Id.*, 968 F.2d at 711 (citation omitted).

In the present matter, this case is similar to both *Atlanta Gas* [3] and *Gopher Oil* in that at the time the suit was filed no third party had made any claim or filed any litigation regarding the sites in issue; neither the state environmental agency nor the EPA had issued any notice or order or threatened any claim regarding those sites; and it is not clear whether either the state or federal government would ever require a clean-up since no notices, orders, claims, litigation or directives have been issued regarding the sites. Those factual similarities between *Atlanta Gas* and *Gopher Oil* also make this case dissimilar from the decisions in *Riehl* and *General Dynamics* because in *Riehl* plaintiff had "received notice that the EPA would commence clean-up of the site, and that all expenses of clean-up would be assessed against Riehl as a 'responsible party' under the comprehensive Environmental Re-

**3.** Indeed save for the fact that the plaintiff in *Atlanta Gas* failed to give notice to its insurer until at the time of filing suit, this case is virtually identical to *Atlanta Gas*. While this failure to give notice was a factor in the court's determination that the case was not justiciable, it was but one factor. Most tellingly, however, was the fact that "it was not clear that state or federal environmental agencies would ever require clean ups at any of AGC's former MGP sites." 68 F.3d at 415.

sponse Compensation Liability Act of 1980 ('CERCLA'), 42 U.S.C. § 9607(a)," [4] 772 F.2d at 21, and in *General Dynamics*, of the sixteen sites at issue, the insured had been "served with lawsuits concerning environmental contamination at seven sites and with letters from federal and state environmental protection agencies or from private parties demanding that it clean up environmental wastes at nine other sites." 968 F.2d at 709. Here, no such lawsuits have been filed nor have demands been made that the Richmond, Bedford, Greencastle, Huntington, Marion, Seymour and Terre Haute sites be clean up or remediated. As such, there is no controversy with respect to those sites and accordingly no justiciable issue is presented to the Court.

In arriving at the foregoing conclusion, this Court is not unmindful of the Seventh Circuit's decision in *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 681 (7th Cir.1992) and its language to the effect that "Article III requires only a probabilistic injury"—which present plaintiff claims to be "dispositive." (Ans.Br. p. 10). Rather than being "dispositive," this Court is of the view that that case is distinguishable.

There, the insured had in fact been sued by a third party before the declaratory judgment action regarding coverage was brought and the only remaining questions were whether the insured would win or lose the suit and the amount of the judgment. While indicating that cases such as *Wooten v. Loshbough*, 951 F.2d 768, 769 (7th Cir.1991) had spoken in terms of "probabilistic injury," the court in *Bankers Trust* indicated that "this doesn't mean that any probability, however slight, is enough to permit a suit to be maintained in federal court. We are dealing with

matters of degree." 959 F.2d at 681.[5] Since the insured's liability (or the possibility that judgment would be less than the coverage amount) was a contingency which did not take the case out of Article III's grant of jurisdiction, the mere possibility that the declaratory relief requested may be rendered moot by the proceedings below was simply a factor relevant to the district court's exercise of equitable discretion to grant or withhold declaratory relief.

Here, unlike *Bankers Trust*, but like *Atlanta Gas*, there has been no suit filed against the plaintiffs and no indication or notice that that will occur with respect to the sites in question. At present, the controversy alleged in plaintiffs' complaint for declaratory judgment relating to those sites is nothing more than hypothetical: if a government agency issues an order or notice; or if an agency requires plaintiffs to take some action with regard to the sites; or if a third party makes a claim; or if a third party files litigation against plaintiffs based on contaminants at those sites; or if plaintiffs incur costs to clean up the sites, there may be coverage for those currently non-existent claims, orders, directives or costs. Such are now mere possibilities, not probabilities, and accordingly the motion to dismiss must be granted.

### Conclusion

On the basis of the foregoing, the "Motion to Dismiss Plaintiff's Claims for Declaratory Judgment as to the Richmond Site for Lack of Jurisdiction" filed July 10, 1996, by defendants St. Paul Fire & Marine Insurance Company, St. Paul Surplus Lines Insurance Company, Ranger Insurance Company, those

**4.** On November 20, 1995, Timothy R. Johnson of the IDEM sent a letter to Indiana Gas which indicates that IDEM is "assessing" all former manufactured gas plants in Indiana. That letter, however, does not create a case or controversy for two reasons. First, it does not give any orders or directives to Indiana Gas to remediate or further investigate its former manufactured gas plants. Rather, it merely requests general information about former manufactured gas plant properties. Second, the letter has no bearing on this case since it was sent over seven months after this lawsuit was filed and, as indicated previously, justiciability is evaluated based

on the state of affairs at the time of the filing of the complaint.

**5.** In its opinion, the court pointed out that many cases in the Seventh Circuit have been read as indicating "that a suit to determine an insurer's obligation to indemnify its insured is premature until the insured has been determined to be liable to somebody," 959 F.2d at 680 (collecting cases), and that "[o]ther circuits take a more liberal view." *Id.* The Court went on to note, however, that "our cases state a general rule rather than an absolute one." *Id.*

London Market insurers severally subscribing to policies of excess insurance in favor or Richmond Gas Corporation, and Home Insurance Company is GRANTED. Likewise, plaintiffs' request for declaratory judgments with respect to the manufactured gas plants at Bedford, Greencastle, Huntington, Marion, Seymour and Terre Haute are DISMISSED. Said dismissals are WITHOUT PREJUDICE.

SO ORDERED.