INDIANA GAS COMPANY, INC., Richmond Gas Corporation d/b/a Indiana Gas Company, Inc. and Terre Haute Gas Corporation d/b/a Indiana Gas Company, Inc., Plaintiffs,

v.

AETNA CASUALTY & SURETY COMPANY, Connie Lee Insurance Company, Continental Casualty Company, Continental Insurance Company, Greenwich Insurance Company, Home Insurance Company, Certain Underwriters at Lloyd's London and Certain London Market Insurance Companies, North River Insurance Company, Ranger Insurance Company, St. Paul Fire & Marine Insurance Company, St. Paul Surplus Lines Insurance Company, and the Travelers Company, Defendants.

No. 1:95–CV–101.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 2, 1996.

Sherrill W. Colvin, Haller and Colvin, Fort Wayne, IN, Ronald E. Christian, Whitney E. Bakley, Indiana Gas Company, Indianapolis, IN, Edward P. Henneberry, Ezra C. Levine, Peter C. Condron, Howrey and Simon, Washington, DC, Charles H. Samel, Howrey and Simon, Los Angeles, CA, for plaintiffs.

J. Frank Kimbrough, Wilks and Kimbrough, Fort Wayne, IN, Scott H. Sirich, Plunkett and Cooney, Detroit, MI, Charles W. Browning, Kenneth C. Newa, Stephen P. Brown, Richard G. Szymczak, Aetna Casualty and Surety Company, Detroit, MI, for defendant Aetna Cas. & Sur. Co.

Roger E. Warin, Evan Anne O'Neill, Harry Lee, John Flyger, James S. Felt, Steptoe and Johnson, Washington, DC, David J. Bloss, Grand Rapids, MI, for defendant Home Ins. Co.

James E. Rocap, Jr., Rocap Witchger and Threlkeld, Indianapolis, IN, Thomas J. Quinn, Stephen Thomas Roberts, Robert J. Keane, Mendes and Mount, New York City, Kandice L. Kilkelly, Rocap Witchger and Threlkeld, Indianapolis, IN, for defendant Certain Underwriters at Lloyd's London.

William L. Sweet, Jr., Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, Robert J. Keane, Mendes and Mount, Kandice L. Kilkelly, Rocap Witchger and Threlkeld, Indianapolis, IN, Brian S. Fraser, Arthur S. Greenspan, Kenneth Held, Richards Spears Kibbs and Orbe, New York City, for defendant Certain Underwriters Ins. Companies.

William Anaya, James S. Stickles, Janet A. Kachoyeanos, Johnson and Bell Ltd., Chicago, IL, for defendant Ranger Insurance Company.

Mary K. Reeder, Riley Bennett and Egloff, Indianpolis, IN, Kathy P. Waring, Sonia S. Waisman, Luce Forward Hamilton and Scripps, San Diego, CA, for defendants St. Paul Fire & Marine Ins. Companies, St. Paul Surplus Lines.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, District Judge.

This matter is before the Court on the "Motion for Summary Judgment On St. Paul Fire and Marine's Excess Insurance Policies" filed by that defendant on July 10, 1996. Indiana Gas responded to that motion on July 31, 1996 to which St. Paul responded on August 9, 1996. For the following reasons, the motion for summary judgment will be granted.

### Summary Judgment Standards

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,*

916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105

(7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether there are genuine issues of material fact, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends there is no genuine issue. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record all material facts to which the non-movant contends there are exists a genuine issue necessary to be litigated. *See Waldridge v. American Hoechst Corp. et al.,* 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–51, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained," and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because the issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

### *Factual Background*

St. Paul issued or allegedly issued excess third party liability policies to Richmond Gas [1] as follows:

| Policy No. | Excess to: | Dates: |
|---|---|---|
| 566XC1488 [2] | Continental $10 million | 8/22/68–10/5/68 |
| 566XC2285 | Globe $25,000 / SIR $975,000 | 10/22/68–11/4/69 |
| 566CX8978 | Globe $50,000 | 4/22/70–71 |
| 513XA0493 | Globe $50,000 | 4/22/71–72 |
| 566XD1990 | Globe $50,000 | 4/22/72–73 |
| 513XA5936 | Globe $50,000 | 4/22/73–74 |
| "Unknown" | Globe $50,000 | 4/22/74–75 |

Thus, the underlying Globe policy limits beneath the St. Paul policies in effect or allegedly in effect from 4/22/70 to 5/31/75 were $50,000 for each accident or occurrence for non-auto property damage for each year of coverage. Plaintiffs have alleged that there are $1 million in underlying limits beneath St. Paul policy number 566XC2285, consisting of $25,000 in Globe policy limits and $975,000 of Richmond Gas' own SIRs [3] for the period from 10/22/68 to 4/11/70.

All of these policies contained language substantial similar to the following contained in St. Paul excess policy number 566XC1488:

### Insuring Agreement

In consideration of the payment of premiums stated in the Declarations the St. Paul Fire and Marine Insurance Company, herein called the Company, agrees to indemnify the insured, in accordance with the applicable insuring agreements of the primary insurance against loss subject to the limits stated in Item 5, Section I of the Declarations and as fully and to all intents and purposes as though the primary insur-

---

1. All of the stock of Richmond Gas was transferred to the Indiana Gas Company in 1991 after Richmond Gas was acquired in 1990 by Indiana Gas' parent corporation Indiana Energy Inc.

2. In footnote one to its answer brief, Indiana Gas indicated that it was withdrawing its claim for coverage for this loss under this policy.

3. The acronym "SIRs" stands for self insured retentions.

ance had been issued for the limits set forth in Item 5, Section III of the Declarations. This policy shall apply only to coverages for which an amount is indicated in Item 5, Section I and then only in excess of the corresponding amount as indicated in Item 5, Section II of the Declarations.

### Definitions

1. Loss. The word "loss" shall be understood to mean the sums paid in settlement of losses for which the Insured is liable after making deductions for all other recoveries, salvage and other insurance (other than recoveries under the policy(ies) of the primary insurer), whether recoverable or not, and shall exclude all expenses and costs.

2. Costs. The word "costs" shall be understood to mean interest on judgments, investigations, adjustment and legal expenses (excluding, however, all expenses for salaried employees and retained counsel of and all office expenses of the insured).

Plaintiffs have settled their claims with the primary carriers for an undisclosed amount. As of the date that the complaint was filed in this cause, Indiana Gas had been billed and paid over $47,500 in investigation costs relating to the Richmond site and that sum has climbed to more than $55,000. It has been estimated that it will costs in excess of $1 million in investigation, response and removal expenses for the Richmond site.

### Application of Law

St. Paul has moved for summary judgment on the grounds that the primary policies and self insured retentions underlying its excess policies have not been exhausted and further because Indiana Gas has not established that they paid or will pay any third party liability claims for damages at the Richmond site. In response, Indiana Gas asserts that its settlements with the primary carriers are completely irrelevant to St. Paul's coverage obligations since the excess policies require only that the liabilities exceed the limits of the primary policies underlying the excess policies. As for St. Paul's argument that it has not established that it will pay any third claims for damages,

Indiana Gas asserts that it has shown "probabilistic" injury. Those arguments will be considered in turn.

Some courts have held that a plaintiff who settles with the primary insurer for less than the primary policy limits reserves the right to pursue an action to the extent of the excess policy limits. See, Kent D. Syverud, The Duty To Settle, 76 Va.L.Rev. 1113, 1209 (1990) (collecting cases). Other courts have reached an opposite conclusion. See, William M. Savino, Excess and Extended Coverages and Excess Coverage Issue, 539 PLI/LIT 445, 452–54 (1995) (collecting cases).

In the present matter, Indiana Gas argues that an excess insurer is obligated to its insured for losses in excess of the limits of any underlying primary policy regardless of whether the insured actually collects from the primary carrier the full amount of the primary policy and in support of that position relies primarily on the decision of the Second Circuit in Zeig v. Massachusetts Bonding & Ins. Co., 23 F.2d 665 (2nd Cir.1928). There, Judge Augustus N. Hand wrote that "the excess insurer has no rational interest in whether the insured collected the full amount of the primary policies, so long as it was only called upon to pay such portion of the loss as was in excess of the limits of the policies." Id. at p. 666.

While Judge Hand was of the view that the "excess insurer has no rational interest in whether the insured collected the full amount of the primary policy," the Seventh Circuit in United States Fire Ins. Co. v. Lay, 577 F.2d 421, 423 (7th Cir.1978) did "conceive of good reasons for an excess carrier to be unwilling to accept liability unless the amount of the primary policy has actually been paid." This is so because, "[a] settlement for less than the primary limit that imposed liability on the excess carrier would remove the incentive of the primary insurer to defend in good faith or to discharge its duty . . . to represent the interests of the excess carrier." Id. See also Ryder Truck Lines v. Carolina Cas. Ins. Co., 270 Ind. 315, 385 N.E.2d 449, 452 (1979) ("the liability of the insurer under an excess insurance clause arises only after the limits of the primary policy are exhausted").

In light of Lay, this Court holds that the primary insurer's limits must be exhausted

before excess insurers are liable. Since Indiana Gas does not dispute that the primary limits have not been paid, St. Paul's motion for summary judgment will be granted.[4] This is in keeping with the notion that a policy "is excess if [the policyholder's] right is contingent on his having exhausted the limits of his other insurance." *Rhone–Poulenc Inc. v. International Ins. Co.*, 71 F.3d 1299, 1301 (7th Cir.1995).

Yet even if the foregoing is incorrect and Indiana Gas could properly settle for under the policy limits of its primary insurance and still pursue its excess carrier, there is but another reason why defendant's motion for summary judgment should be granted. This is so because, as discussed more fully in this Court's Memorandum of Decision and Order granting the motion to dismiss filed by defendant St. Paul Fire & Marine Insurance and others,[5] plaintiffs have failed to show a justiciable controversy with respect to the Richmond site. The existence of a case or controversy is a prerequisite to all federal actions, including those for injunctive and declaratory relief. *Skelly Oil Co. v. Phillips Petroleum*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–9, 94 L.Ed. 1194 (1950).[6]

In the present matter, at the time the suit was filed no third party had made any claim or filed any litigation regarding the Richmond site; neither the state environmental agency nor the EPA had issued any notice or order or threatened any claim regarding that site; and it is not clear whether either the state or federal government would ever require a clean-up since no notices, orders, claims, litigation or directives have been issued regarding the site. Given those facts,

this case is akin to the Eleventh Circuit's decision in *Atlanta Gas & Light v. Aetna*, 68 F.3d 409 (11th Cir.1995) and the Eighth Circuit's decision in *Gopher Oil Company v. Bunker*, 84 F.3d 1047 (8th Cir.1996).

True, as pointed out by plaintiffs in opposition to this motion (and in opposition to the motion to dismiss), the Seventh Circuit's in *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 681 (7th Cir.1992) indicated that "Article III requires only a probabilistic injury." However, as pointed out in this Court's decision granting St. Paul's motion to dismiss, *Bankers Trust* also indicated that the "probabilistic injury" is a "matter of degree." *Id.* In *Bankers Trust*, the insured had in fact been sued by a third party before the declaratory judgment action regarding coverage was brought and the only remaining questions were whether the insured would win or lose the suit and the amount of the judgment. Here, unlike *Bankers Trust*, but like *Atlanta Gas*, there has been no suit filed against Indiana Gas and no indication or notice that that will occur with respect to the Richmond site. For this reason also therefore, summary judgment will be granted.

### Conclusion

On the basis of the foregoing, defendant St. Paul Fire and Marine Insurance Company's July 10, 1996, "Motion for Summary Judgment On St. Paul Fire and Marine's Excess Insurance Policies" is GRANTED.

SO ORDERED.

4. Indiana Gas also argues that the policy is ambiguous because it states that coverages apply "in excess of the corresponding amount indicated in Item 5" (the amount of the limits of the underlying policy) and does not state that the underlying carriers must actually pay the entire limits of the underlying policies before the excess policies apply. This Court is of the view that the language is not ambiguous. In fact, it is similar to that at issue in *Lay* which, so far as relevant, provided: "the Company agrees to indemnify the insured for ultimate net loss in excess of the retained limit hereinafter stated, which the insured may sustain by reason of the liability im-

posed upon the insured by law, or assumed by the insured under contract." 577 F.2d at 422.

5. That order is issued contemporaneously herewith. See 946 F.Supp. 627.

6. "[A] justiciable controversy is ... distinguished from a difference or dispute of a hypothetical or abstract character; [or] from one that is academic or moot." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.*